Good morning, Your Honors. Maureen Shanahan for Appellant, Johnny Cordova. This is kind of an in- Pull the mic down just a little bit. I guess I'm a little shorter. The two big issues involve claims of ineffective assistance of counsel by my client. The first issue is, I find, fairly compelling in that the court has decided the Nunez v. Mueller case, which is somewhat similar to this particular case. Counsel for Appellee has made reference in their brief that we had, the district court in this case, considered the wrong evidence because there were several petitions in this case. The first habeas petition was filed in the Court of Appeal, and that's when this issue of ineffective assistance of counsel in failing to advise about the plea was first raised. This is in state court? This is in the state court, yeah. It began in the Court of Appeal and then was to the Supreme Court. Both of those, the petition itself and the petition for review, were denied summarily, so there was no hearing. There is some question as to what was said in the petition that we filed then subsequently in federal court with my client's declarations indicating that the plea would be open. He was advised by counsel that the plea would remain open, whereas in the state court, his declarations indicated that the plea would always be there. I don't, I think it's a matter of semantics when we're dealing with those kind of terminology. The bottom line is what was represented to him by his trial counsel was that the plea would always be there. Now, what was said about the 995 motion? What did he tell his? Now, this is according to the declaration of whom? My client's declaration indicated that his attorney told him that he was filing a motion to dismiss and that it was a 97 percent chance that it was going to succeed, and if it didn't, then they could consider the plea. My client's history. That the plea offer, the 12 years, would still be open. Correct, correct. And if you look at the history, there's a lot to back up. I think the focus seems to be, and what the trial court did in considering the district court in this case, everybody focused on the fact that there was not enough prejudice. Well, similar, my client did say, although in the first state court of appeal brief, the very first habeas, he did say, he asked after the 995 was denied. He asked his attorney to accept the plea. At that time, which was quite a bit later, the attorney advised him that the plea offer had been withdrawn when they filed the motion. And I think a reasonably competent attorney would know that it's a standard thing. Nobody wants to do a lot of work. That's the practicality. So once the motion is filed, if you've got an offer on the table, the offer is likely or could be withdrawn once you've making them do a lot of work to respond to this. Counsel, was it withdrawn when the motion was filed or when it was denied? According to the declarations, and this goes to part of the problem is the need for the evidentiary hearing, ties into this because we don't have and can't present everything fully via the declarations. But apparently, according to the declaration of my client that was submitted, it was withdrawn when the motion was filed. But he was not advised of it until the motion was denied. What evidence is there in the record so far that Mr. Kordova would have accepted the 12 years? What is the evidence of that? He stated to, well, he told his client, he told his attorney after the motion was denied to accept. After the motion was denied. After the motion was denied, in keeping with, and it's very consistent with what he says that his attorney told him, his attorney said let's do the motion first, 97 percent chance, which seems bizarre, but whatever, 97 percent chance that it was going to succeed. And if it doesn't, then we'll talk about the plea. Okay. So then the first chance, the first mention of was, the first mention of I would have accepted it, is when his attorney tells him, look, the motion was denied. Or he asks him about it, he finds out the motion was denied. And then the attorney, and then your client says, what about the 12-year offer? Exactly. He says what? I would have accepted it? He said let's take the offer. The attorney had not told him it was withdrawn at that point in time. He just tells him the motion's been denied. He tells him the motion's been denied. The court understands, okay, let's take the 12 years. Exactly. Exactly. And then if we go back to originally, the attorney never, in the beginning, the only way my client learned about the 12-year offer from the get-go was when he asked counsel if there was any offer. And if you look at his criminal record, he has a fairly extensive record. His violent crimes are all fairly old. This guy's been to the post a lot. Exactly. But if you look at it, he has a pattern of pleading. I believe there were maybe two cases that he took to trial, but almost every case he had pled in. So he's obviously aware that there was an offer, and he was expecting counsel to advise him that there was an offer if there was. And that goes to corroborate his statements that he would have taken it. He did testify in the district court petition, the second petition raising this issue. We did allege that he would. He specifically alleged that he would take it. And if there was an evidentiary hearing, I can assure you, I've talked to Mr. Cordova many times about this, and it's a sore point for him, he would have taken it. There's no way he was going to. He wasn't going to take it before the 995 hearing was settled. He asked counsel, and if you read the declaration in the current, the second petition in the district court, his declaration does indicate that he asked counsel about it. He said it was a lot of time, but when he balanced it against the potential for life sentence and how he'd been treated, he felt that maybe he should take it at that point in time. Counsel is the one who then discouraged that and said, no, let's do this first. It will always be open. So in not advising him that there is a chance, you know, we run the risk if we do this motion that it's not going to be open. But he went along with counsel's assessment. And to say 97% chance that a motion is going to be granted, I mean, that I find is just highly unlikely, you know, to make that kind of a representation to a client. Has the lawyer filed a declaration? No, he hasn't. Okay. No, he hasn't. What was the motion? Do you know? Was it for suppression or what? No, it was a 995 motion to dismiss where there was the use of a general statute, a specific statute was the possession of a switchblade versus the general statute, possession of a concealed weapon, the dirk and dagger, which is what they escalated it to as a felony. Personally, when I read the, you know, the motions, I didn't quite see it as being that strong. And, you know, I don't think that I would have advised a client that there was a 97% chance. Quite frankly, in my own personal opinion, I think any attorney who gives a client that kind of an assessment, that, you know, they're going to have it come back to them. I don't think competent counsel should ever give clients you're going to win. You know, that is not, there's no sure thing in the law. There's no sure thing in any case. You said there were two ineffective assistance of counsel. Yes. The second claim of ineffective assistance is the failure of counsel to investigate and request discovery in relation to the potential filing of a motion to challenge the conduct of the prosecutor, either by vindictive prosecution motion, selective prosecution, some means to challenge. If you read the facts in the declarations that set forth, this started out as a traffic stop. My client was not involved in any criminal activity in any way, shape or form. He was driving his ex-wife's car that didn't have a front license plate. He was stopped. They ran his license and found out that he had a warrant for driving a suspended license, I believe it was, something of that nature. The officer patted him down, found a switchblade in his back pocket, said they had some discussion. He cited him for, arrested him, cited him for misdemeanor possession of a switchblade. Two weeks later, about two weeks, something in that range, he is then rearrested after an indictment for felony possession of a concealed weapon. And the background of the case is what is where the questions are and why my client felt that it was important to challenge the conduct of the prosecutor. He was a former gang member. There was a ---- The prosecutor was? No. I'm sorry. No. Definitely not. No. The prosecutor was, had a task force where they were prosecuting all of the former gang members of the Nuestra, excuse me if I say it wrong, Familia gang, a Mexican prison gang. And when my client was a former member, he went through the process in prison. He was debriefed. He was no longer a gang member. And he was subpoenaed. He had a conversation with the prosecutor. She wanted to try and get him to give information in terms of other known gang members and different cases she was prosecuting. And the initial stage, he said no. He then was subpoenaed to testify in a perjury trial against another gang member. He told her he wasn't going to testify. And then at that point, fortunately for him and her, the case settled. He never had to testify. But there is a three strikes panel in Santa Cruz. We've, you know, I found that out. We've alleged it. That reviews all three strikes cases. This was started as a misdemeanor. And the prosecutor took the case, obviously, for various reasons. Now, the question is not how the district court and the state court, the district court looked at it correctly, but the state court looked at it as if we were saying that they're not making the motions. The question we have right now is we don't know at this point in time, because so far removed, what would have been disclosed, what discovery would have revealed, what investigation. I've talked to a few people, and I've alleged it in a declaration, that have told me some of the things that have gone on in how they're treating these particular cases. This was the gang-related cases, and it was the task force. And they were using lots of tactics to try and get different gang members or former gang members to testify against their former members. And we don't know exactly. At this point, we're kind of strapped in a position because we don't know what – it's harder now to do it. Had they done it at that point in time, counsel would have been in a position to make an assessment, an accurate assessment of whether or not there is something there. A $5 million bail for possession of a switchblade. Kennedy. What are the elements of vindictive prosecution so that the prosecution can be quashed? Pardon? What are the elements? I have to go back to my brief. I'm sorry. I don't have them off the top of my head. I'm sorry. We need a couple of minutes of rebuttal. Okay. Thank you very much. Thank you. Good morning, Your Honors. Larry Sullivan for the State Attorney General's Office representing the warden. The issue here, the main issue, I think, is the plea bargain offer. The district court, Judge Fogel, found that there was neither prejudice nor, in fact, ineffective representation by Mr. Wright. Pull the mic down just a little. We're missing some of what you said. Is that better? The district court, Judge Fogel, found that neither prong of the Strickland test was found with respect to either one of these claims. The primary claim I believe that's being pressed here today is, I believe, the plea bargain offer. The important points to make here is that, number one, the original claim was that a plea bargain offer was untimely made or was untimely conveyed to the client by the defense attorney. That's more or less gone by the wayside because there's absolutely no evidence that the two weeks between the making of the offer and giving the plea bargain offer were untimely. More accurately, the character of how it was conveyed. Correct, Your Honor. And I think that an important point to make here is that it is not just a matter of Mr. Cordova having been around the post a few times. He has four strikes and many, many felony convictions and even more misdemeanor convictions. It's a fact that he was around the post before in plea bargaining felony cases with this attorney, with Mr. Wright. It may well be true that you or I or anybody else who walked in cold with a client and said, by the way, two weeks ago there was a 12-year offer in this three strikes case, let's go for this motion to dismiss, it will always be there. You may not put it that way when your client is a cold client, you've never met this person before. But that isn't the case here. These people are experienced plea bargainers. Nobody's claiming that. Were there any evidence that these people being experienced plea bargainers had experienced a similar statement that it will always be there and it hadn't been? There is no record showing whether the defendant ever believed that, in fact, he had just been told, gee, you can file a 995 and if it gets denied you have the right to enter that plea bargain. Nobody's claiming that. He's saying all he told me was it will always be there. That's a judgment by counsel. That's based on experience. That's based on prior practice. The evidentiary hearing would flesh out the other that you say is not here, but the question is does it have to be here in order to get the evidentiary hearing? The evidentiary hearing can only flesh out, as I understand it, what might have happened if other things had happened, if different statements had been made, if somebody had gone back to the prosecutor and all that. That's a lot of hindsight, which is utterly irrelevant to Strickland. The only thing we have, and this is what Judge Vogel found, is that there is no evidence, either by declaration or allegations otherwise, that it wasn't an open offer when it was conveyed to Mr. Wright and when Mr. Wright conveyed it to the Petitioner. That's what the record shows. That's not a violation of anything. There was no evidence that it was an open offer? The argument I am making here is that the record shows no evidence that it was anything other than an open offer at the time it was conveyed to the defense counsel and at the time defense counsel conveyed it to the Petitioner. But that's a little bit different from saying it will always be there. Well, I think in practice it's the same, Your Honor, because what else can it mean? Nobody in this gentleman's position, who has been through the experience of felony convictions and plea bargaining felony convictions with this attorney, is going to ever allege in an evidentiary hearing or anywhere else that he doesn't know that prosecutors can withdraw offers at any time unless they've made some kind of representation to a court that they will not. But there's no such allegation here. Is it law in California that a prosecutor can withdraw an offer at any time for any reason? I am saying certainly before a plea is offered, before a plea is entered and accepted by the courts, of course. There is case law to that effect, both state and federal, I believe. In fact, Borden-Kirscher v. Hayes, I believe, would be the U.S. Supreme Court case, if I'm not mistaken. Do we know for sure what the lawyer actually said? What we know, he said, according to the allegations of the petition is. The lawyer hasn't given any affidavit at all. And that may well raise a problem for the other side under 2254E2 in getting an evidentiary hearing because due diligence would suggest that they could have asked and didn't. In any event, the fact that we know what they are claiming he did say, that it will, quote, always be there, doesn't amount to anything since by his own, by petitioner's own statement and his own declarations, what it led him to believe was that he could take it, quote, at a later time. Not that he could take it at any time, not that he could take it after a motion to dismiss was denied, but that he could take it at a later time. And in fact, that was true. That was true. He could take it at a later time. You know, he wasn't led to believe something falsely by counsel. He wasn't talked into believing by counsel as if I'm telling you, the client, gee, don't worry because no matter what happens down the road, you will be able to take this plea. He didn't make any kind of representation like that. He says the lawyer told him that, look, we can file this motion and we can wait to have it heard, and then after it's heard and it's denied, you can accept the 12-year deal. What a ñ what ñ because this is ñ this is critical. Let me just read this portion. With respect ñ this is Judge Fogle. With respect to Cordova's claim that he did not accept the offer when conveyed because he believed it was open-ended, there is not ñ no evidence the offer was not open-ended when made. It appears the offer, in fact, stayed open for more than a month. Constantinis, the prosecutor's subsequent decision to withdraw the offer when Cordova moved to dismiss the indictment, does not retroactively render trial counsel's characterization of the offer false or unreasonable. There is no evidence in the record as to when or why Constantinis changed her mind. It depends on what the counsel said in the first place. But we know what the allegations of this petition are. The allegations of the petition are he said no more, no less than it's a 12-year offer, it'll always be open. He didn't say it's a 12-year offer, the prosecutor has told me that he will not withdraw it, or the prosecutor will give you that offer no matter what happens in this case, including a motion to dismiss. Didn't make those kinds of representations. Maybe the defendant inferred a lot into it. Maybe he read a lot too much into that statement. But that's not counsel being ineffective. That's not falling below the reasonable performance standard. As far as the prejudice standard goes, we have absolutely nothing that suggests that the prosecutor was going to extend this offer. And, frankly, it's very odd to think that in a case where, by the way, Judge Flesher, it was a first question, a first impression, at least one of the issues on that 995. We argued this on direct appeal in the state courts a lot of years ago now, and one of them was an argument that 653K of the California Penal Code superseded for this kind of object, this particular knife, superseded and preempted a prosecution, not just a conviction, but a prosecution under 12020A of the Penal Code, the Dirk or Dagger statute, concealed on a person. And that was new. Now, there was, I believe, two other issues in that 995, including just simply insufficient evidence that it was a Dirk or Dagger, which was itself, by the way, I don't know if your honors are interested in pursuing this, but at the time there was a lot of statutory change going on with 12020A Dirk or Daggers. And those of us who play in these fields, I guess you could say, were deeply involved in trying to determine exactly what a Dirk or Dagger was and what kind of objects it was. That was a hot issue in the 90s. And there were a lot of published, a fair number of published decisions on the line. Are you saying that then the lawyers, the 97% prediction was okay because of all that uncertainty? I think that the counsel made his best judgment. He thought he had a rock-solid winner. We make those kinds of judgments and we make decisions like that, both prosecutors and defense attorneys, all the time. Sometimes you have to. You know, there's an underlying issue here that I think needs to be pointed out. It's not true in California that when someone conveys an offer to a defense attorney that they go up and say, it's 12 years, it's for the following period of time, it will be open, it will be so on and so forth. They don't set out some kind of paper. This is not a U.S. Attorney's Office we're dealing with. We're not dealing with a four-page agreement. Okay? We typically will walk up to someone at an arraignment or a continuance hearing and say, it's 12 years. Now, what does the defense attorney do? I hear it's still being done the same way. It is. It is. It doesn't change. Would that it was a little bit more complicated than that, we might be avoiding these kinds of issues. It would be nice. But we don't have time for that. We got hundreds of these cases. Three strikes is not uncommon, okay? And the reality is what probably happened, and here I'm off the record. I want to be clear. Someone said it's 12 years. Now, what does the defense attorney do with that? Is he supposed to say? Does he have to say? Well, please, sir, please tell me the following things. If I bring a 995 and it is denied, will you be continuing that offer? Please, sir, if I bring a 1538.5 to suppress, will you be doing? You know, give me all the contingency so that I can tell my client. Well, there's a word, a phrase that's called go pound sand, and that's what prosecutors do in those situations. A defense attorney is a practical matter, Your Honors, has to make the best judgment they can. You've got to base it on experience and so forth. This attorney was experienced. He was experienced with this client, and he made the best, you know, decision he could make under the circumstances as they existed at that time. That's reasonable conduct. But it did represent that it would always be open even after the denial of the 995 motion. Was that not ineffective assistance? I would disagree, Your Honor, because it could be that he thought, in my experience, that will not trigger, in my best judgment, that will not trigger a response by the prosecutor. He may have been wrong about that. And let's assume, let's assume the outside chance, let's assume what's not in the petition and the allegations, that the defense attorney said, you know, sir, here's what's going to happen. We're going to refuse it now. We'll take it up later. We'll talk about it when the motion is denied. And, you know, I believe you'll get that 12 years, and that's it. You're going to get that 12 years, no better, no worse. That's all. So it's only in hindsight that we can say that. It's only in hindsight we can say that, yeah. If there are no further questions, I'll submit it. First off, do you want me to give you the, okay. Excuse me here. To establish prosecutorial vindictiveness has to show through objective evidence the prosecutor acted with genuine animus toward the defendant, and the defendant would not have been prosecuted but for that animus. Now, we're saying if it would have been, not that he wouldn't have been prosecuted, but he wouldn't have been prosecuted for a felony three strikes case. He had a misdemeanor. He would have taken that. He probably would have pled to it. But he also had a long criminal history. He did have a long criminal history, but this was a wobbler to begin with. Even as the concealed weapon, it is a wobbler. But a zealous district attorney would be tempted to say, this is a good opportunity to remove this subject from the street. Well, obvious, but this district attorney wasn't the district attorney who would have normally in the process of things gotten this case. Her whole focus during that time was the gang cases. She wasn't doing anything else. It was a task force, her and her husband. They were the two attorneys who were handling the gang cases. So a misdemeanor case coming in wouldn't have come to her. And even if it had been a three strikes, a normal three strikes that had come, it wouldn't have come to her because we alleged in my declaration, and again, this is areas that would have to have been discovered and explored in the course of investigation. I did this after the fact many years talking to different attorneys in the Santa Cruz area, San Jose area, to determine what was going on. So that's the word. We're really strapped in a case because they didn't do it, and we can't discover at this point in time what the ultimate motivation was. But I want to get back and make a comment in response to the claim. Counsel spoke about Judge Vogel's statement that there's no evidence that it was not open-ended when it was made. That really is kind of irrelevant in the scheme of things because we're not concerned if it wasn't open-ended, but counsel knew this client. He represented him two or three times before there were pleas involved. Now, you could look at that in two ways. You could look at it was he experienced, but we don't know, there's nothing in the record, nothing anywhere, that indicates that he'd ever dealt with a situation where the plea offer was withdrawn or likely he could have pled in the first instance in each case and it had never been an issue. But the fact that he had this attorney and was represented by an attorney who he had a relationship with, he would be more inclined to go with the advice of counsel as to what he should do. And McMahon v. Richardson talks about when dealing with a plea and the advice of counsel, it has to be within the range of competence demanded of criminal defense attorneys. And if you have a client who has a history with you and you know they're going to trust you, you have to be cautious with what you advise them. You have to be cautious with saying this has a good chance of success, we do have the offer, but to say it will always be open is beyond what is competent advice. It's not within the range of what a normally competent attorney would give a client that they know would rely on everything they say. And I just want to read the declaration. It's over. Oh, I'm sorry. Thank you. Thank you very much. This matter will be submitted.
judges: B. Fletcher, Thompson, Bea